[Cite as *State v. Taylor*, 2020-Ohio-490.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                           :

    Plaintiff-Appellee,              :

                                   No. 108322

    v.                                       :

GEORGE R. TAYLOR,                        :

    Defendant-Appellant.            :

---

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED IN PART, REVERSED IN PART, AND REMANDED
**RELEASED AND JOURNALIZED:** February 13, 2020

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-18-631409-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Michael A. Barth, Assistant Prosecuting Attorney, *for appellee.*

Mark A. Stanton, Cuyahoga County Public Defender, and Paul Kuzmins, Assistant Public Defender, *for appellant.*

PATRICIA ANN BLACKMON, J.:

{¶ 1} Defendant-appellant George Taylor appeals from convictions for improperly handling a firearm in a motor vehicle (with forfeiture specifications),

and carrying a concealed weapon (with forfeiture specifications), following the denial of his motion to suppress evidence. He assigns two errors for our review:

I. Reasonable suspicion of criminal activity does not exist when a car is operated with a frame that overlaps slightly with a portion of the car's rear license plate.

II. Officers exceeded the scope of a plain smell probable cause search for marijuana without justification.

{¶ 2} Having reviewed the record and the controlling case law, we affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

{¶ 3} On August 15, 2018, following a traffic stop in Westlake, Ohio, Taylor was charged with improperly handling a firearm in a motor vehicle and carrying a concealed weapon, both with forfeiture specifications. He pled not guilty and moved to suppress the state's evidence.

{¶ 4} During the suppression hearing, Westlake Police Patrolman Nicholas Ribich ("Officer Ribich") testified that on July 14, 2018, he was behind Taylor's car, traveling westbound on Interstate 90. According to Officer Ribich, due to the position of the license plate holder of the vehicle, the validation and expiration stickers of the plate were not visible, contrary to Westlake Ordinance 335.09 and R.C. 4503.21. Because he could not see the two required stickers, he decided to make a traffic stop of the vehicle.

{¶ 5} Taylor did not have a valid driver's license and the two other occupants did not have driver's licenses. Officer Ribich also testified that he smelled

the odor of marijuana during the traffic stop. He decided to search the car and also called for backup assistance. He subsequently learned that there were three outstanding warrants for Taylor.

{¶ 6} Westlake Police Patrolman Jarod Sirl ("Officer Sirl") testified that as he assisted with the search, he smelled marijuana in the vehicle and that loose marijuana and ammunition were found in the center console. The officers continued to look for additional marijuana and a handgun. Officer Sirl observed a "separation" between the dashboard and center console that was "kind of separated and noticeably sticking away." He "removed the panel" of the dashboard and found two magazines for a pistol and a loaded firearm. The vehicle was subsequently towed to a lot in North Olmsted.

{¶ 7} The trial court denied the motion to suppress, and Taylor pled no contest to the charges.

## I. Traffic Stop

{¶ 8} In the first assigned error, Taylor argues that Officer Ribich lacked reasonable suspicion to stop his vehicle. He maintains that upon the officer's approach, he could see, based upon the color of the small portion of the sticker that was visible, that the vehicle's registration was current.

{¶ 9} This court's review of a decision on a motion to suppress is a mixed question of law and fact. *State v. Lennon*, 8th Dist. Cuyahoga No. 104344, 2017-Ohio-2753, citing *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. This court defers to the trial court on its factual findings, but reviews

de novo the trial court's application of those facts to the applicable law. *Id.*, citing *Burnside.*

**{¶ 10}** A traffic stop constitutes a seizure that implicates Fourth Amendment protections. *Delaware v. Prouse*, 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979). A police officer may lawfully stop a vehicle if the officer has a reasonable articulable suspicion that the operator has engaged in criminal activity, including a minor traffic violation. *Dayton v. Erickson*, 76 Ohio St.3d 3, 11, 665 N.E.2d 1091 (1996) (probable cause to stop driver based on the traffic turn signal violation occurring in the officer's presence).

**{¶ 11}** Under R.C. 4503.21, the failure to display in plain view any validation sticker constitutes a minor misdemeanor. *In re G.H.*, 8th Dist. Cuyahoga No. 100274, 2014-Ohio-2269, ¶ 20. This court has previously recognized that a partially obscured validation sticker constitutes a violation of R.C. 4503.21 that supports a traffic stop because "that statute prohibits any obstruction of 'visibility' of a license plate." *State v. Robinson*, 8th Dist. Cuyahoga No. 85149, 2005-Ohio-2834, ¶ 30; *see also In re G.H.* at ¶ 20.

**{¶ 12}** Taylor insists that because the top portion of the sticker was visible and was the color for the current year, the officer lacked reasonable suspicion. However, this court rejected that argument in *In re G.H.* This court stated:

> G.H. focuses on the fact that [the] validation sticker was not expired, which Officer Cicero knew based on the color of the sticker. But R.C. 4503.21 does not solely require a current validation sticker; it also mandates the manner in which it must be displayed. The record reveals that the validation sticker was obstructed by [the] license-plate bracket

and that the specific expiration date based on * * * birthday could not be seen. Based on this violation of R.C. 4503.21, Officer Cicero had probable cause to stop the vehicle and request [the] driver's license and registration. *See, e.g., State v. Fredo*, 7th Dist. Columbiana No. 11 CO 5, 2012-Ohio-1496 (a violation of the statute supported the officer's detainment of the driver, despite officer ultimately observing the license plate in the rear cab window of the truck); *State v. Phillips*, 2d Dist. Montgomery No. 22918, 2009-Ohio-3519 (officer's ultimate ability to read the plate does not mean no violation of R.C. 4503.21 occurred; officer was not required to turn defendant loose upon reading the plate).

*Id.* at ¶ 21; *accord State v. Ramsay*, 9th Dist. Lorain No. 06CA009074, 2007-Ohio-668; *State v. Williams*, 9th Dist. Lorain No. 09CA009679, 2010-Ohio-3667.

**{¶ 13}** Taylor also argues that this matter is similar to *State v. Brooks*, 11th Dist. Lake No. 2005-L-200, 2007-Ohio-344. In *Brooks*, the officer testified that he stopped the defendant's vehicle because the rear license plate was partially obstructed by a frame. The trial court found and the court of appeals agreed that the photos of the stop showed that the numbers could, in fact, be read, so the officer lacked probable cause to stop the defendant's vehicle. *Id.* at ¶ 37, 39.

**{¶ 14}** Here, however, the officer testified that he could not see the numbers because they were concealed by the license plate holder. Therefore, the officer had reasonable suspicion to stop the car for a violation of R.C. 4503.21.

**{¶ 15}** Accordingly, the first assigned error is without merit.

## II.    Scope of Search

**{¶ 16}** In the second assigned error, Taylor argues that the officers' search exceeded the scope of the probable cause in this case.

{¶ 17} "'[U]nder the automobile exception to the warrant requirement, the police may search a motor vehicle without a warrant if they have probable cause to believe that the vehicle contains contraband.'" *State v. Alim*, 8th Dist. Cuyahoga No. 105164, 2017-Ohio-8868, ¶ 27, quoting *State v. Battle*, 10th Dist. Franklin No. 10AP-1132, 2011-Ohio-6661. Probable cause for a search is defined as a "fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). It is more than just a hunch. *See State v. Alexander*, 151 Ohio App.3d 590, 2003-Ohio-760, 784 N.E.2d 1225, ¶ 57 (8th Dist.). The *Alim* court explained:

> Courts define probable cause in the context of an automobile search as "'a belief, reasonably arising out of circumstances known to the seizing officer, that an automobile or other vehicle contains that which by law is subject to seizure and destruction.'" *State v. Parrish*, 10th Dist. Franklin No. 01AP-832, 2002-Ohio-3275, ¶ 27, quoting *State v. Kessler*, 53 Ohio St.2d 204, 373 N.E.2d 1252 (1978). Accordingly, "[t]he determination of probable cause is fact-dependent and turns on what the officer knew at the time he made the stop and/or search." *Battle* at ¶ 34.

{¶ 18} Turning to the search of the passenger compartment of the vehicle, we note that "[t]he smell of marijuana, alone, by a person qualified to recognize the odor, is sufficient to establish probable cause to conduct a search." *State v. Moore*, 90 Ohio St.3d 47, 50-51, 2000-Ohio-10, 734 N.E.2d 804, syllabus; *State v. Blevins*, 2016-Ohio-2937, 65 N.E.3d 146, ¶ 29 (8th Dist.). Accordingly, the officers properly discovered the marijuana and ammunition located in the center console.

{¶ 19} Turning to the weapon found after Officer Sirl removed a dashboard panel, we conclude that this invasive action was undertaken on the basis of a mere

hunch, a nonparticularized suspicion, and not on the basis of probable cause. Further, the search cannot be supported as an inventory search because the record failed to show that this component of the search was undertaken in accordance with reasonable police procedures or established routine. *State v. Mesa*, 87 Ohio St.3d 105, 108, 1999-Ohio-253, 717 N.E.2d 329, citing *South Dakota v. Opperman*, 428 U.S. 364, 369, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976). Therefore, the trial court erred in denying the motion to suppress as to the gun found in the dashboard panel.

{¶ 20} The second assigned error is well-taken in part.

{¶ 21} The judgment of the trial court denying Taylor's motion to suppress is reversed with regard to the weapon and statements pertaining to the weapon, but is otherwise affirmed.

{¶ 22} It is ordered that appellee and appellant share the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


_____
PATRICIA ANN BLACKMON, JUDGE

ANITA LASTER MAYS, J., CONCURS;
EILEEN T. GALLAGHER, A.J., DISSENTS
WITH ATTACHED DISSENTING OPINION

EILEEN T. GALLAGHER, A.J., DISSENTING:

{¶ 23} I concur with the majority's determination that Officer Ribach had reasonable grounds to stop Taylor's vehicle. However, I respectfully dissent from the majority's conclusion that the removal of the dashboard panel "was undertaken on the basis of a mere hunch, a nonparticularized suspicion, and not on the basis of probable cause."

{¶ 24} As noted by the majority, the automobile exception permits the police to conduct a warrantless search of a vehicle if there is probable cause to believe that the vehicle contains contraband, and exigent circumstances (typically satisfied by the mobility of the vehicle) necessitate a search or seizure. *State v. Mills*, 62 Ohio St.3d 357, 367, 582 N.E.2d 972 (1992), citing *Chambers v. Maroney*, 399 U.S. 42, 51, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970). "As it relates specifically to an automobile search, probable cause is 'a belief reasonably arising out of circumstances known to the seizing officer, that an automobile or other vehicle contains that which by law is subject to seizure and destruction.'" *State v. Durham*, 2013-Ohio-4764, 999 N.E.2d 1233, ¶ 32 (12th Dist.), quoting *State v. Kessler*, 53 Ohio St.2d 204, 208, 373 N.E.2d 1252 (1978).

{¶ 25} As previously discussed, Taylor's vehicle was lawfully stopped due to his failure to comply with R.C. 4503.21. Generally, "when detaining a motorist for a traffic violation, an officer may delay the motorist for a time period sufficient to issue a ticket or a warning." *State v. Keathley*, 55 Ohio App.3d 130, 131, 562 N.E.2d 932 (2d Dist.1988). However, "'the detention of a stopped driver may continue beyond

[the normal] time frame when additional facts are encountered that give rise to a reasonable, articulable suspicion of criminal activity beyond that which prompted the initial stop.'" (Citations omitted.) *State v. Batchili*, 113 Ohio St.3d 403, 2007-Ohio-2204, 865 N.E.2d 1282, ¶ 15, quoting *State v. Howard*, 12th Dist. Preble Nos. CA2006-02-002 and CA2006-02-003, 2006-Ohio-5656, ¶ 16.

{¶ 26} In this case, Officer Ribich encountered additional facts — the odor of marijuana — which gave rise to a reasonable, articulable suspicion of criminal activity beyond the traffic violation for which the initial stop was prompted. Under such circumstances, the Ohio Supreme Court has explained that:

> [t]he smell of marijuana, alone, by a person qualified to recognize the odor, is sufficient to establish probable cause to search a motor vehicle, pursuant to the automobile exception to the warrant requirement. There need be no tangible evidence to justify a warrantless search of a vehicle.

*State v. Moore,* 90 Ohio St.3d 47, 48, 734 N.E.2d 804 (2000).

{¶ 27} Taylor does not dispute that Officer Ribich was qualified to recognize the odor of marijuana as a trained officer. Thus, having probable cause to conduct a search of Taylor's vehicle, Officers Ribich and Sirl were justified in searching "every part of the vehicle and its contents that may conceal the object of the search." *United States v. Ross*, 456 U.S. 798, 825, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982). Moreover, the officers were not required to obtain a warrant to search additional portions of Taylor's vehicle once they discovered marijuana and ammunition in the center console. As succinctly explained by the Tenth District:

> The smell of marijuana provided the officers with probable cause to search the passenger compartment of [defendant]'s car and that probable cause does not end once some drugs are found. *State v. Maughmer*, 4th Dist. Ross No. 09CA3127, 2010-Ohio-4425, ¶ 2 (drugs found during search of glove box even after other drugs already found); *State v. Bazrawi*, 10th Dist. Franklin No. 12AP-1043, 2013-Ohio-3015, ¶ 29-31 (gun lawfully found after already discovering drugs). Simply put, the probable cause justifies the search of the entire car.

*State v. Taylor*, 10th Dist. Franklin No. 14AP-857, 2015-Ohio-3252, ¶ 22; *see also State v. Donaldson,* 6th Dist. Wood No. WD-18-034, 2019-Ohio-232, ¶ 27-30. As applied to the facts of this case, I would conclude that the officer's discovery of the marijuana and ammunition only provided them with "additional indicia of drug activity" to justify the continued search of Taylor's vehicle. *See State v. Franklin*, 8th Dist. Cuyahoga No. 99806, 2014-Ohio-1422, ¶ 24. Under such circumstances, I am unable to conclude that the decision to remove the displaced panel was predicated on a mere hunch. Rather, it was attempt to search an area of the vehicle that could reasonably conceal additional contraband. *See State v. Nesbit*, 8th Dist. Cuyahoga No. 107278, 2019-Ohio-1646 ("Officers also found a small bag containing marijuana in the vehicle's driver's side door panel."); *State v. Chapman*, 73 Ohio App.3d 132, 596 N.E.2d 612 (3d Dist.1992) (upholding search of the entire vehicle, including the engine compartment, for the presence of drugs.).

{¶ 28} The majority's holding contradicts well established case law, and misapplies legal terms in an effort to invalidate the scope of the search performed in this case. As stated, the majority relies on the phrases "hunch" and "nonparticularized suspicion" to find the search of Taylor's vehicle to be invasive.

However, these phrases have been historically applied to the assessment of whether an officer had reasonable suspicion of criminal activity. *State v. Jones* 70 Ohio App.3d 554, 556-57, 591 N.E.2d 810 (2d Dist.1990). The terms have no relation to the scope of a search performed under the automobile exception. Because there is no debate in this case that the officer's had both a reasonable suspicion to conduct the traffic stop and sufficient probable cause to search the vehicle, the majority's decision will have substantial implications moving forward. It significantly alters the framework of the automobile exception. As recognized by the U.S. Supreme Court, "if probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of *every part of the vehicle and its contents* that may conceal the object of the search." (Emphasis added.) *United States v. Ross*, 456 U.S. 798, 825, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982).

{¶ 29} For the foregoing reasons, I would find the scope of the search was reasonable and within the confines of the automobile exception. The officers had probable cause to search the entire vehicle, including the steering panel, for the presence of contraband.